McBRIDE, Judge.
Plaintiff, alleging his total and permanent disability from performing work of any reasonable character, seeks to recover workmen’s compensation from his employer’s insurer. He alleges he suffered bilateral inquinal hernia in an accident on March 18, 19S3, at 3 o’clock in the morning, while working as a laborer for Fincher Construction Company. We need concern ourselves only with the defense that no such accident as is alleged befell plaintiff.
The case was tried in July of 1953, which resulted in a nonsuit. Upon plaintiff’s motion, a new trial was granted and the matter was heard again in February 1954. A judgment dismissing plaintiff’s suit was then rendered, from which this appeal has been taken.
Williams testified that on the Wednesday morning in question he worked 50 feet in the air on suspended aluminum stages under the roof of the Chrysler Plant at Michoud, and that while carrying one end of a heavy 12-foot length of timber with two men at the other end, the stages slid open which spread eagled him “as far as my legs goes.” Williams says he experienced pain between his legs and went to the lavatory for a thirty-minute period and then returned to the job. His story is that the two men on the other end of the timber witnessed the accident and he named one of these as Collier, but he does not know who the other workman was. Plaintiff produced Bufkin, a carpenter, but this witness did not see the accident and all he knows is that after returning from the lavatory Williams told him that he had injured himself on the stages. The record shows that Bufkin is no longer in the employ of Fincher Construction Company because of certain labor troubles involving all carpenters on the job.
Collier was at the other end of the timber, and he denies that Williams met with any accident. He went on to say that Williams asked him would he tell Kemp, the foreman, that he had seen the accident but that he declined to do this. Collier states that the only time Williams ever mentioned an accident to him was on the following Friday and this was when Williams wanted him to tell the foreman that he had witnessed the accident on the previous Wednesday. The Friday night mentioned seems to have some special significance in that it was then that Williams was fired or otherwise terminated his employment with Fincher Construction Company.
The foreman, Kemp, testified that the area in which Williams worked was about the same size as the courtroom and that had an accident happened he surely would have known of it. He maintained there was no accident and he went on further to say that had Williams been away from the job for the thirty-minute period recuperating in the lavatory, he would have known of that also as Williams’ absence would have been noted. According to Kemp, Williams made no report whatever of an accident until after his discharge on the Friday night.
Several versions of the accident emanate from Williams. His allegation in the petition is that he was injured when “the stage slid on the soft, muddy ground, causing him to slip and his legs to be thrown wide apart.” However, it might be mentioned that one of his attorneys took the witness stand at the trial and testified that this allegation had been made in error as a result of the attorney having confused the facts of Williams’ case with those of another workmen’s compensation case which he was handling. Dr. Lynch was told by Williams “he slipped while stepping from one scaffold to another and was forced to catch himself, * * * climbed down the scaffold and sat on the ground a few minutes and went back to work.” Williams’ statement in the coutroom was that the stages slid open causing his legs to spread and he then climbed down a 50-foot ladder and went to the lavatory to rest. Hardy, *872 defendant’s superintendent, states that the story Williams told him was that he “slipped and fell on to stages” and this was the information that Hardy placed in the report) which he made of the accident. Dr. Scott testified that Williams made the statement to him that “while picking up pieces of timber he hurt his abdomen,” and made no suggestion that his injuries occurred when his legs had been forced apart by reason of the slipping of the stages.
. Upon the retrial of the case, Williams produced a witness named Hunneycutt, who at the time was confined to Parish Prison awaiting trial on several criminal charges. The appearance of this witness was under a' writ of habeas corpus ad testificandum. Hunneycutt’s testimony, both on direct and cross examination, was that he saw Williams fall on the stages, but this directly contradicts Williams’ denial from the witness stand that he ever fell down. Moreover, Hunneycutt identified Spencer and Collier as having been present and witnessed Williams’ fall. Collier already had denied that he was a witness to any accident, and Spencer, when' called by the defendant on the retrial, also made positive denial that he had ever seen Williams fall or injure himself in any manner.
Williams mentioned that in the year 1947 when he had worked as a longshoreman for T. Smith he met with an accident and received longshoremen’s and harbor workers’ compensation up until about three months prior to the time he went to work for Fincher Construction Company. He declares that when compensation payments were stopped by T. Smith he was in sound physical condition. However, he produced no physicians to testify as to his condition in December 1952, and even if he had produced medical evidence showing the then soundness of his physical condition, this would not constitute proof that the hernia were occasioned by an accident while in the employ of Fincher Construction Company, because there was an unexplained three-month lapse of time between the termination of compensation payments and the commencement of the employment by Fincher Construction Company.
The mere fact of this being a workmen’s compensation case did not dispense with plaintiff’s necessity of making out his case by a preponderance of evidence and with legal certainty. A claimant for compensation is in no different category from a plaintiff in any other type of case insofar as proof is concerned and he carries the burden of proving his case to the same extent.
The trial judge was most patient and tolerant and afforded Williams full opportunity to prove that he had met with an accident which caused the injuries of which he complains. The new trial was granted to facilitate Williams’ production of any additional evidence he could to make out his case, and the only witness produced was Hunneycutt, whose testimony did not bolster plaintiff’s position in any way.
The learned and experienced trial judge saw and heard the witnesses testify and did not believe that there had been an accident. We have carefully sifted the record, and we must concur in that finding. There is certainly no manifest error in the judgment.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.